**B. & P. MOTOR EXPRESS INCOR-PORATED, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 17045.

United States Court of Appeals Seventh Circuit.

July 24, 1969.

George Gregory Mantho, Detroit, Mich., for petitioner.

Marcel Mallet-Prevost, N. L. R. B., Washington, D. C., for respondent.

Before KILEY and SWYGERT, Circuit Judges, and HOFFMAN, District Judge.[1]

JULIUS J. HOFFMAN, District Judge.

The employer, B. & P. Motor Express, Inc., has petitioned for review of an order of the National Labor Relations Board, and the Board has filed its cross-petition for enforcement of the order. The Board's order, adopting the findings and recommendations of the Trial Examiner, directs the employer to cease and desist from interfering with its employees' right to engage in concerted activities protected by Section 7 of the Labor Management Relations Act, 29 U.S.C. Sec. 157 (1947), and orders reinstatement with compensation for any loss of pay suffered by the four employees involved.

The principal question presented for review is the sufficiency of the evidence to support the finding that the employees' conduct constituted concerted activity protected by the Act. The parties are in substantial agreement about what was said and done by the participants in the dispute. They disagree, however, on how these occurrences should be characterized under the law.

We find that there is substantial evidence in the record made before the Trial Examiner to support the following findings: The employer's clerical staff for the night shift comprised four employees: Staigvil, Weixel, Proctor, and Lopuch. They were not members of any labor union, and were unrepresented by any designated bargaining agent. While at work on September 29, 1967, they discussed among themselves their assorted complaints and grievances against their employer. Apart from conditions affecting individual employees, the dominant focus of the discussion was the extra hours they had been, and would be, called upon to work in order to complete the billing each night. They were understaffed, they believed, with only Proctor and Lopuch working on billing alone, Weixel handling freight manifests, and Staigvil assisting in both jobs. They resolved to seek a meeting with Mr. Messner, Office Manager, to discuss the problems that night. When Mr. Messner failed to arrive promptly for the scheduled meeting, the four left their employment and waited in a nearby diner. When he did arrive, the grievances were discussed, and Messner acceded specifically to each demand. On the question of understaffing and consequent extended working hours, he agreed to assign a part-time biller to full-time work, and to give Staigvil more

---

1. Judge Hoffman is sitting by designation from the United States District Court for the Northern District of Illinois.

training and experience in the portion of her job consisting of the preparation of freight manifests, to enhance her speed and efficiency.

On the next workday, however, the overtime problem appeared to be unresolved. The additional full-time biller proved to be less productive than expected, and Staigvil was assigned, at her regular rate of pay, to duties ordinarily handled at a higher rate by a day employee who was ill. As a result, her participation in billing and in manifests was limited, and all four worked from one to two hours overtime. They thereupon agreed to seek a further meeting with the Company, at a higher level of management. Mr. Peoples, the Terminal Manager, agreed to meet with them on the next day, but later postponed the conference. When they learned that no meeting would be held that night, that Staigvil had again been assigned to work on freight payments, at her regular rate of pay, and that they would again be required to work overtime, the four left their employment together. When a spokesman for the four telephoned Mr. Peoples the next day, she was advised that their jobs were gone, and that they would not be permitted to return to work.

 These facts fully support the Board's conclusion that the four employees acted in concert in a common cause relating to their hours of work and for their "mutual aid and protection" within the meaning of Sec. 7 of the Act. See NLRB v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1961). The employer, however, argues that Staigvil was properly discharged for insubordination in refusing to perform the work assigned to her, and that the action of the other three employees, joining in the walkout in sympathy and support, was unprotected as well. The argument fails, however, in both its factual and legal aspects. As a matter of fact, the employer's argument assumes that the employees acted solely in support of Staigvil's demand for a higher rate of pay, an assumption refuted by the Board's finding, with adequate support, that the concerted action was motivated both by the common grievance on overtime and by a desire to support Staigvil's request. Even if factually supported, the argument fails as a matter of law, against the authority of decisions holding that concerted action in support of a fellow employee over his individual grievance is nonetheless protected. See NLRB v. Peter Cailler Kohler Swiss Chocolate Co., 130 F.2d 503, 505–506 (2d Cir.1942); NLRB v. Holcombe, Inc., 325 F.2d 508, 511 (5th Cir. 1963). The evidence also supports the conclusion that the employer had reasonable notice of the purpose of the walkout, and that the discharge cannot be justified as good faith company action in the face of an unexplained refusal to work. Cf. NLRB v. Ford Radio & Mica Corp., 258 F.2d 457 (2nd Cir.1958).

The petition for review will accordingly be denied, and the Board's cross-petition for enforcement of its order is granted.

Enforcement granted.